Pinkney D. Woods *v.* John Elliott *et ux.*, Guardians.

1. STATUTE OF LIMITATATIONS—ADMINISTRATOR BOUND TO PLEAD IT, BUT NOT SPECIALLY.—Under the provisions of the code of 1857, page 443, article 81, it was the duty of an administrator to give the required notice to creditors, within two months after the grant of letters, and art. 83 required claims to be registered within two years after the first publication of the notice. By the act of January 29th, 1862, the statute was suspended until one year after the war, and it commenced running again the 2nd day of April, 1867. There is an obvious distinction between a cause of action, and a right, though a cause of action generally confers a right. Thus statutes of limitation do not generally affect the cause of action, but take away the right. The right may be suspended and the cause of action still exist.

2. SAME—SUPERVISOR OF.—Absolute suspension of the right, and prohibition to exercise it, exists during war, by the law of nations, and if so, then it is clear that peace cannot bring with it the remedy, if the war is of much duration, unless it also be held, that the operation of the statute of limitations is also suspended, during the period the creditor is prohibited by the existence of the war, and the law of nations, from enforcing his claim.

3. SAME—CASE IN JUDGMENT.—Where an administrator fails to interpose the statute of limitations, in defence against a claim that is barred, but compromises or pays money, he does it wrongfully, and the estate is not liable to him for the amount so wrongfully paid.

Appeal from the chancery court of Yalobusha county, Hon. DeWitt Stearns, Chancellor:

The bill was filed to the November term, 1872, of the chancery court of Yalobusha county, to recover from John and Eliza Elliott, guardians of George L. Davidson, a minor, and sole heir of F. L. Davidson, deceased, the sum of $273.55, paid out by him as administrator *de bonis non* of said decedent, in the compromise of a debt due from said decedent. The bill sets out the following state of facts:

Said Davidson and one Robertson, partners in trade, on the 1st day of January, 1861, executed their promissory note for $837.03, to Wesson & Cox, of New York, payable ten months after date, with New York exchange, which note was afterwards endorsed to the Shoe and Leather Bank. Davidson died the 20th day of December, 1862, intestate. Robertson is also dead, and his estate insolvent. H. M. Davidson was appointed administrator of F. L. Davidson's estate in March, 1863, and, as far as the records show, gave no notice to creditors to probate claims. H. M. Davidson died in December, 1865, leaving assets of said estate unadministered. In January, 1866, Woods, the appellant, was appointed administrator *de bonis non.* In September, 1869, he filed his final account, which was allowed in January, 1870. Complainant, believing he had fully administered said estate, thereupon made full distribution by paying to these guardians about $600.00. Some time in 1871, said Shoe and Leather Bank presented this note to complainant, and demanded payment, which was refused, complainant having no funds of said estate in his hands. On the 19th day of October, 1871, said bank sued complainant, in the circuit court of said county, as administrator *de bonis non* on this note. Before trial, complainant compromised with said bank, by paying $207.50, and $57.00 attorney's fee, and $9.50 court costs, out of his own money. The compromise was made under advice of counsel. From January 1st, 1861, until the institution of this suit, the holders of the note were citizens of New York. Davidson and Robertson, till their death, were citizens of Mississippi. Complainant prays that the amount thus paid be deemed a charge in his favor, on the estate of this minor, inherited from his father, in the hands of his guardians. To this bill these guardians filed a demurrer. The causes of demurrer are as follows:

1. Want of equity on the face of the bill.

2. Complainant has lost his remedy by compromising the suit at law without defending the same.

3. Complainant shows by his bill that he had a good and

valid defence to the suit at law, which he failed to set up; by his own negligence and laches, and in his own wrong, he paid out the money claimed.

4. The complainant's remedy, if any, is in a court of law.

5. If complainant was liable, as administrator, judgment might have been rendered against him—the assets reached in the hands of distributee, or amount allowed on final account, and such was complainant's remedy.

6. The statute of limitations of two years, in which time said claim should have been probated.

7. The said note is now, and was, when suit was brought on it, barred by the statute of limitations of four years, in which all actions must be brought against executors and administrators. Defendants rely on all statutes of limitation.

8. From the allegation of the bill, defendants could not voluntarily pay complainant said money, and, not being authorized so to do, they cannot be compelled by law to pay it.

9. There was no legal liability or necessity for complainant to pay Attorney's fees and costs. If complainant had a right to compromise, he might have done so as well before, as after suit, and saved these expenses.

10. If complainant was liable at all, it was an individual liability, the result of a *devastavit*, and for which the assets in the hands of the guardians are not now liable.

Upon argument, the court rendered a decree sustaining the demurrer and dismissing the bill. Thereupon the complainant prayed an appeal to this court. The error complained of is the action of the court in sustaining the demurrer and dismissing the bill.

*Geo. H. Lester*, for appellants:

If the note described in the record in this case was a valid claim, in the hands of the bank against the estate of F. L. Davidson, deceased, when put in suit by the bank, then Woods was properly sued as administrator *de bonis non* of Davidson, and judgment for the bank would necessarily

have followed, notwithstanding Woods had settled his final account of the estate in the probate court, made distribution, and been discharged. The estate was not fully administered, and could not be fully closed so long as there was a valid debt outstanding, for whose payment it was liable. Pollock v. Buie, 43 Miss., 140.

And had the bank prosecuted its suit to judgment, against Woods, as administrator *de bonis non*, the property of Davidson's estate, in the hands of his heir, would have been liable to its satisfaction. Ib. But Woods compromised the suit with the bank, paying the amount of the compromise with his own money, and the question now presented is, whether *he* can follow the estate into the hands of the heir and reimburse himself the amount actually paid. This question, like that involved in the suit of the bank against Woods, depends, for its solution, on the validity of the indebtedness preferred by the bank against the estate of Davidson. For, if that claim was a valid charge against Davidson's estate, then Woods, as his administrator, not only had the right, but it was his duty to provide for its payment, and this he did. That an administrator, who has paid a just debt against the estate of his intestate, out of his private funds, is entitled to an allowance for the same in his administrator's account, in case the estate has passed into their hands. Woods v. Ridley, 27 Miss., p. 150. The court say, " It is not to be controverted that if he, with his own money, pay the debts, he will be entitled to charge the estate, in his administrator's account, with the amount of the debts so paid, to have the effects sold for the payment of his claim. *He would also have the right, by bill in equity, to enforce the payment of his demand against the heirs and distributees, in case the estate had passed into their hands.*" Short, admr., v. Porter, 44 Miss., 533.

But it is insisted by the defendant, that the note on which Woods was sued, by the bank, was barred by the statute of limitations. If defendant's theory be correct, and this note was not a valid charge against the estate of Davidson when

settled by Woods, or if, in other words, the bank could not have recovered at law, then the compromise was improper, and Woods cannot now charge the estate with the amount. The action of the court below must be governed by the question of the validity of the claim against the estate. To show that the note was not barred by the statute of six years, the note was executed January 1, 1861. At ten months it matured, November 1st and 4th, 1862. The statute was suspended January 29, 1862, until one year after the war. The war ended by proclamation, April 2, 1866, and suit was brought to the October term, 1871, of the circuit court. Was it barred by the statute of limitations of two years? It is shown that Davidson died December 20, 1862, and that at the next succeeding March term of the probate court, letters of administration were granted to H. M. Davidson, who *gave no notice to creditors of the estate to register claims,* as required by the Code of 1857, p. 443. The next page (444) provides that claims not registered in two years from first notice shall be barred. The two articles must be taken and construed together, and the latter applies only where it affirmatively appears that the notice presented in the former, has been given; and before the estate can claim to be exonerated, by reason of the failure of the creditor to register his claim, it must be shown that the administrator gave the notice in the manner prescribed by the statute. Bank of Ala. v. Windham, 31 Miss., 317; Pearl v. Conley *et al.,* 7 S. & M., 356; Dowell v. Webber, 2 S. & M., 452. But had Davidson given the requisite notice, even then, in view of the hostile relations existing between him and the creditor, it might well be urged that this statute of limitations could not be interposed. 10 Wallace, 172. In any view of the case, therefore, I arrive at the conclusion that the demurrer upon this ground was improperly sustained.

But it is insisted that the note was barred by reason of the failure of the creditor to sue on it within four years after the qualification of the administrator, and upon this statute

defendants have chiefly rested their case. This will be found equally untenable. The Revised Code of 1857, art. 11, p. 400, provides that " no action or *scire facias* shall be brought against any executor or administrator, upon any judgment, *or other cause of action*, against his testator or intestate but within four years after the qualification of such executor or administrator. Now, as Davidson qualified at the March term, 1863, and suit was not instituted until October 19, 1871, it is apparent that more than four years and nine months had elapsed, and that the claim was barred unless a state of facts existed that would take it out of the operation of the statute. The statute commenced running on the 2d day of April, 1867. If, therefore, the creditor, in addition to the four years, is allowed nine months, then his suit was in time to save him from the bar. But, it may be said that the statute prohibiting suits for nine months after the grant of letters, is for the benefit of the estate, and that inasmuch as this restriction had been removed, and the said creditor could have brought his suit at any time after the war terminated, the nine months must be excluded, *ratione cessante cessat lex*. And this view seems to carry some force.

*J. C. N. McNeill*, for appellees:

Woods, the appellant, shows, by his bill, that on the 9th day of October, 1871, he was sued as the administrator *de bonis non* of Davidson, deceased, on a note which fell due November 1, 1861, and that he was appointed in January, 1866. With full knowledge of the fact that his appointment bore date nearly six years anterior to the bringing of this suit, and that the statute of limitations had commenced to run on the note more than four years before the institution of the suit, he had no right to pay it without making at least the defense the law requires him to make. Henderson v. Illsby, 11 S. & M., 9.

And it avails appellants nothing to say that he made an advantageous compromise, or that he acted under the

advice of distinguished counsel, if he has failed to discharge a duty laid upon him by law. And we submit that it is not consonant with the principles of equity and good conscience now to allow him to be reimbursed out of the property of this minor, in the hands of these appellees, for money paid out in his wrong, and by his own laches and neglect. But the defense set up by the seventh cause of demurrer is certainly conclusive of the appellants case.

The note sued on was clearly barred by the statute of limitations. Rev. Code, 1857, p. 400, art. 11.; 40 Miss. Rep., p. 611, ib., 618; 28 Miss., 312; 33 Miss. 155.

More than four years elapsed after his appointment, and before suit was brought by the bank. Now, when was this note affected by the statute of limitations? We answer, when the right of action thereon accrued. Johnson v. Pyles, 11 S. & M., p. 189.

When did the cause of action accrue? In November, 1862, when the note became payable. Angell on Lim., sec. 42–105,

Counsel's theory was, that when this debt matured, the citizens of the States of New York and Mississippi were at war. That in consequence thereof, all commerce and communication between the citizens of these States was cut off. That no suit could have been brought on this note on account of the civil war.

We maintain that this position is not tenable in point of law. A cause of action accrues when the creditor has a full and perfect right to prosecute his demand. Angell on Lim., p. 54, § 42.

They had the right to sue in November, 1861. There was a party, in law, capable of suing and of being sued, Angell on Lim., p. 54, sec. 63; there was then also a breach of the contract. It was a right then vested in him from the very nature and terms of the contract.

The right vested in them, but they were cut off from their remedy by the existence of the war.

In 1861 the courts of this State were open to litigants, and the machinery of the State government in full operation. And

if this creditor was cut off from the remedy which he had on the note in this State, it is simply one of the many hardships of the late war, and nothing more. The case at bar cannot be held to be analogous to that class of cases where the debtor dies before the debt becomes due. In those cases the statute does not begin to run until there is an administration, because, until then, a right of action has not accrued, there being no one capable of being sued. Abbott v. McElroy, 10 S. & M., 100.

As stated above, there must be a party to be sued. Davidson was alive when the note fell due, and under no disability, unless the disability grew out of some statutory provision.

Nothing short of this will affect the operation of the statute, and the courts have no power to engraft exceptions upon the statute. 2 S. & M., 452; 14 S. & M., 52; 28 Miss., 312, 361–730. Statutes of limitation are to be construed strictly, and the courts must adhere to the plain meaning and literal expression of the statute. Angell on Lim., sec. 485; 28 Miss., 312; ib., 361; ib., 730; ib., 17. If the exception in their favor does not exisit in law, the court will not create it for them. McIver v. Ragan, 2 Wheaton, U. S. Rep., 25.

These statutes should be strictly construed. They are founded upon considerations of public policy and private justice.

The case at bar aptly illustrates the propriety and wisdom of these statutes of repose. The administrator paid off the debt without authority of law. The debt was due nearly eleven years before suit was brought on it. The creditor had had all the benefits of the suspension of the statute of limitations during the war, and one year after its close. The debtor was dead, his estate administered to final settlement and distribution, and this debt had not been heard of. Its collection was clearly barred by the statute of limitations, and we confidently submit that this court will not compel reimbursement out of the property of this minor.

Peyton, C. J., delivered the opinion of the court:

This is an appeal from a decree of the chancery court, sustaining the defendants' demurrer to, and dismissing the complainant's bill.

The facts of the case are, that F. L. Davidson and Jesse Robertson, residents of the State of Mississippi, on the 1st day of January, 1861, executed their promissory note of that date for $837.03, to Wesson & Cox, residents of the State of New York, payable ten months thereafter, which was indorsed by them to the Shoe and Leather Bank of the city of New York, in the State of New York. That said F. L. Davidson, died intestate, on, or about the 20th of December, 1862.

That at the March term of the probate court of Yalobusha county, letters of administration of his estate were granted by said court, to one H. M. Davidson, who proceeded to administer said estate, without giving any notice to creditors to present their claims, and have them registered within the time prescribed by law.

That in the month of December, 1865, the said administrator departed this life, leaving assets of said estate unadministered. And at the January term, 1866, of said probate court, letters of administration *de bonis non* of the estate of F. L. Davidson were granted to Pinkney A. Woods, who, after fully administering said estate, as he then believed, on the 2nd day of September, 1869, filed in said probate court his final account of his administration, which, at the January term following, was examined and allowed by said court, as a full and final settlement of the administration of said estate; and a decree made, that the assets be distributed among the heirs of decedent, and that said administrator be discharged from the trust. And in pursuance of said decree the assets were handed over to John Elliott and Eliza J. Elliott, guardians of George L. Davidson, minor heir of the said F. L. Davidson, deceased. That the said bank, on the 19th day of October, 1871, instituted suit against said Pinkney D. Wood, as administrator aforesaid, to recover the

amount due on his note. This suit was compromised by the defendants paying the plaintiff $207.50, together with the costs of suit and attorney's fees, amounting in all to $273.55. To subject the estate distributed to the payment of this sum, the said Wood filed his bill in the chancery court of said county against said guardians, setting forth substantially the above stated facts, which, as before stated, was dismissed upon demurrer. This action of the court below constitutes the only assignment of error in this court. It will be readily perceived that the main question in this case is, was the claim of the bank against the estate of the deceased, on which the appellant was sued, barred by either of the statutes of limitation of two, four and six years? The estate, both real and personal, of the decedent stands charged with the payment of his debts, and for the purpose of ascertaining their amount, the statute has made it the duty of the executor or administrator, within two months after the grant of his letters, to publish in some newspaper printed in the county, or some adjacent county, a notice requesting all persons having claims against the estate to exhibit the same and have them registered, in the manner and within the time prescribed, or they will be forever barred. Revised Code of 1857, art. 81, page 443. And by art. 83 all claims against the estate of the decedent are required to be registered in the court in which the letters testamentary or of administration were granted, within two years after the first publication of notice to creditors to present their claims. And as this statute commences to run only from the time of the first publication of notice to creditors, and as there has been no notice published in this case, there was no bar of the claim sued on under this statute.

We will now proceed to consider whether said claim was barred by the statute of limitation of six years. The note was due on the 4th day of November, 1861. But the right of action thereon was suspended by the war, and the statute of the 29th of January, 1862, suspending the operation of the statute of limitations until one year after the war, which

was the 2d day of April, 1867, when the statute of limitations commenced running against the claim sued on by the bank. Hence, it clearly appears that the claim was not barred by this statute of limitations when the suit was brought on it on the 19th day of October, 1871. This brings us to the consideration of the four years statute of limitations, which provides that no action or *scire facias* shall be brought against any executor or administrator upon any judgment, or other *cause of action* against his testator or intestate but within four years after the qualification of such executor or administrator. Revised Code of 1857, art. 11, page 400. It is insisted, on the part of the appellant, that no cause of action accrued against the said F. L. Davidson, his intestate, and that, therefore, the statute does not apply to this case; that no cause of action could accrue as to matters in controversy between citizens of the opposing beligerents during the war between the United States and the Confederate States of America. This view of the effect of the war, it is believed, cannot be sustained. It is said there is an obvious distinction between a cause of action and a right, though a cause of action generally confers a right. Thus statutes of limitation do not generally affect the cause of action, but take away the right. 1 Bouvier's Law Dictionary 247. The cause of action and the right of action upon it are not to be confounded. The cause of action may exist, whilst the right to enforce it in the courts of the country may be suspended. We think the cause of action existed against the deceased in his life time in contemplation of this statute, but that the right to enforce it by action in the courts, was suspended for a time by the combined operation of the war, and the statute suspending the operation of the statute of limitations.

The old doctrine was, that though the courts of justice were shut up in time of war, so that no process could be instituted, yet the statute of limitations would continue to run. This rigid doctrine seems to have been maintained by Chief Justices, Bridgman, and Holt; but Plowden lays down the

more rational doctrine to be, that things happening by an invincible necessity, though they be against the common law, or act of parliament, shall not be prejudicial; and that to say the courts were shut, is a good excuse on voucher of record; and this was also the opinion of Lord Coke, who says: " that in the times of domestic war, when the courts of justice are shut, a decent shall not take away an entry, though the disseisin was in time of peace; for, if it did, the disseisee would be without remedy, there being no courts open to him to bring his action in."

The English authorities, says Nugel on Limitations, all relate to the civil and domestic wars of that country, when the courts of justice were shut, and, consequently, when a party, if he was ever so much disposed, could assert no claim, however just. Such an extraordinary state of things is certainly not to be presumed; and, therefore, not contemplated by the legislature of any country; and consequently the legislature, in limiting a period for the commencement of suits, does not intend that an individual, after suffering all the inconveniences accompanying so serious an event, shall also be deprived of the rights which belonged to him before it occurred.

The doctrine of Plowden and Sir Edward Coke on this subject, has been adopted by the Supreme Court of the United States, in the case of Hanger v. Abbott, 6 Wallace, 539; in which the court say: " total inability on the part of an enemy creditor, to sustain any contract in the tribunals of the other belligerent, exists during war, but the restoration of peace removes the disability, and opens the doors of the courts. Absolute suspension of the right, and prohibition to exercise it, exist during the war by the law of nations, and if so, then it is clear that peace cannot bring with it the remedy, if the war be of much duration, unless it also be held that the operation of the statute of limitation is also suspended, during the period the creditor is prohibited, by the existence of the war and the law of nations, from enforcing his claim. Neither laches nor fraud can be

imputed in such a case, and none of the reasons on which the statute is founded can possibly apply, as the disability to sue becomes absolute by the declaration of war, and is a conclusion of law. Ability to sue was the status of the creditor when the contract was made, but the effect of war is to suspend the right, not only without any fault on his part, but under circumstances which make it his duty to abstain from any such attempt. This remedy is suspended by the acts of the two governments, and by the law of nations, not applicable at the date of the contract, but which comes into operation in consequence of an event over which he has no control." This doctrine commends itself to our adoption by its good sense, reason and justice.

According to the foregoing views, the statute of limitation was suspended in the case under consideration until the 2d of April, 1867, the cause of action having accrued in the lifetime of the deceased, the claim sued on was barred by this statute at the time of the institution of the suit, on the 19th of October, 1871. It has been held, that though an administrator is not bound to plead the statute of limitations specially, he is bound to rely on it as a defense, which he may do under the general issue. Straub v. Kirkman, 13 S. & M., 599 ; and Roberts v. Rogers, 6 Cush., 152. The appellant ought to have interposed this defence to the suit against him as administrator, by the bank, and not having done so, he wrongfully compromised and paid money as administrator, for which the estate was not liable.

We think the court below did not err in sustaining the demurrer, and dismissing the bill.

The decree will, therefore, be affirmed.